<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEVIN J.,<br><br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | Civil Action No. 21-4337 (SDW)<br><br>**OPINION**<br><br>May 13, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Devin J.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Douglass Alvarado's ("ALJ Alvarado") denial of Plaintiff's claim for supplemental security income ("SSI") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Alvarado's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

I.      **PROCEDURAL AND FACTUAL HISTORY**

    A.      **Procedural History**

Plaintiff filed for SSI and disability insurance benefits on September 14, 2018 (the "application date"), alleging disability beginning in March 2017 due to anxiety, obsessive compulsive disorder (OCD), and split discs in his neck and lower back. (D.E. 7 (Administrative Record ("R.")) at 62–63, 159–71.) The state agency denied Plaintiff's applications at the initial and reconsideration levels. (R. 92–96, 100–02.) Plaintiff received a hearing before ALJ Alvarado on April 7, 2020, and the ALJ issued a written decision on April 27, 2020, finding that Plaintiff was not disabled. (R. 15–24.) The Appeals Council denied review on January 5, 2021, and Plaintiff subsequently filed the instant appeal in this Court. (R. 1–4; D.E. 1.) Plaintiff only appeals the denial of SSI, and the relevant date for this opinion is therefore his application date, not his alleged disability onset date. (*See* D.E. 16 at 1 n.1.) The parties subsequently completed briefing and Plaintiff did not file a reply. (D.E. 16, 17.)

    B.      **Factual History**

Plaintiff is 29 years old and filed his application at the age of 25. (R. 22, 62.) He has a 10th-grade education and no past relevant work experience. (*See* R. 22, 62, 37–38.) The following is a summary of the relevant medical evidence in the record.

Plaintiff reported neck and back pain following a car accident around 2015. (*See* R. 326.) X-rays of his lumbosacral spine in January 2018 were "[u]nremarkable." (R. 370.) However, X-rays of his cervical spine revealed straightening of the normal cervical lordosis (compatible with muscle spasms) and mild multilevel degenerative changes, as demonstrated by early osteophytosis, endplate sclerosis, and moderate loss of disc space height. (R. 371.) In May 2018, Plaintiff presented with tenderness and decreased range of motion in his lumbosacral and cervical spine.

(R. 366–67.)  His straight leg raise tests were positive bilaterally.  (*Id*.)  A January 2019 cervical spine MRI showed straightening of the cervical lordosis compatible with muscle spasms, disc bulges at multiple cervical levels, disc herniation, and borderline canal stenosis.  (R. 398.)

Also in January 2019, Plaintiff had a consultative examination with Dr. Mirseyed Mohit, M.D.  (R. 326–30.)  On examination, Plaintiff ambulated with minimal difficulty, had no difficulty getting on and off the examining table, was able to get dressed and undressed independently, did not use a cane or braces, and was able to walk on heels and toes.  (R. 327–28.)  Dr. Mohit noted that Plaintiff had reduced range of motion in his cervical and lumbar spine and bilateral shoulders, but his strength, sensation, and reflexes were intact in his bilateral extremities, and there was no atrophy.  (*Id.*)  A straight leg raise test was positive bilaterally.  (*Id.*)  Plaintiff reported that he was prescribed oxycodone for pain.  (R. 326.)

Before and during the relevant time period, Plaintiff had monthly examinations with Dr. Silvio Quaglia, M.D.  (R. 331–467, 409–63.)  Dr. Quaglia's examinations revealed tenderness in the lumbosacral spine and neck with positive straight leg raise tests and decreased range of motion in the lumbar and cervical spine, but his examinations were otherwise "[a]ll normal," and Plaintiff consistently had a normal gait with no atrophy.  (*See, e.g.*, R. 338, 342, 344, 347, 351, 353, 356, 360, 364, 367, 412, 414, 439, 443, 445, 448, 452, 454, 458, 460, 463.)

Two state agency experts reviewed Plaintiff's medical records and offered their opinions as to Plaintiff's physical impairments.  Dr. Mohammad Rizwan, M.D., opined on January 18, 2019, that Plaintiff can perform the full range of light work.  (*See* R. 69–70.)  On reconsideration on April 11, 2019, Dr. Howard Stein, D.O., concurred that Plaintiff can perform light work, but only with several postural restrictions.  (R. 81, 84–86.)

3

Plaintiff also has a history of mental impairments, including depression, anxiety, and OCD. (R. 321–23.) However, Plaintiff did not receive any mental health treatment or take any psychiatric medication during the relevant time period. (R. 321.) On January 2, 2019, Plaintiff had a consultative examination with Dr. Marc Friedman, Ph.D. (R. 321–23.) During the evaluation, Plaintiff spoke in simple sentences and did not initiate conversation, but he was able to sustain conversation and had little difficulty following the topic of conversation. (R. 322.) He had a subdued mood and constricted affect. (*Id.*) He recalled two of three objects after three and five-minute delays, could repeat five digits forward and three in reverse, could perform serial threes but not serial sevens, and could spell "world" forward but not backward. (*Id.*) He was slow in performing simple mathematic calculations, had difficulty with abstraction and concentration, and had a limited fund of information. (*Id.*) Meanwhile, the treatment records from Plaintiff's physical monthly check-ups with Dr. Quaglia consistently stated that he was alert and oriented, had no recent or remote memory loss, had a normal mood and affect, and exhibited normal judgment and insight. (*See, e.g.*, R. 338, 344, 347, 351, 353, 356, 360, 364, 367, 412, 414, 439, 443, 445, 448, 452, 454, 458, 460, 463.)

Two state agency experts reviewed Plaintiff's medical records and offered their opinions as to Plaintiff's mental impairments. Dr. Steven Reed, Ph.D., opined on January 4, 2019, that Plaintiff has moderate limitations in understanding and memory, sustaining concentration and persistence, social interaction, and adaptation. (R. 70–72.) He also opined that Plaintiff is able to carry out instructions, relate adequately, maintain concentration, persistence and pace, and adapt to typical changes that occur in a work-like setting in which he is assigned simple, routine tasks. (R. 72.) Dr. Robin Kirby, Ph.D., agreed with this assessment on reconsideration on April 18, 2019. (R. 86–88.)

4

### C. Function Report and Hearing Testimony

In a function report that he completed in October 2018, Plaintiff stated that he drove, shopped in stores for clothes and sneakers, cared for himself independently, managed money, cooked noodles, and performed chores such as sweeping, mopping, and taking out the garbage. (R. 203–04.) He also stated that he got along well with authority figures, handled changes in his routine well, and followed instructions well. (R. 206–07.) He stated that his impairments did not cause limitations with memory, concentration, following instructions, getting along with others, or completing tasks. (R. 206.) To relax, he watched television and played video games. (R. 204.)

On April 7, 2020, Plaintiff appeared with his attorney and testified at a telephone hearing before ALJ Alvarado. (R. 15, 31–50.) Plaintiff testified that he could not work due to his neck and back pain, depression, anxiety, and OCD. (*See* R. 38, 47–48.) He described his impairments as far more debilitating than he did in his function report. For example, he testified that, as a result of his pain, he did not lift anything, could only sit comfortably for about five to ten minutes, could stand only for five minutes, and could only walk a block before needing a break. (R. 40–43.) He also testified that he did not drive or do chores around the house and did not like to be around others in public places. (R. 46–49.) ALJ Alvarado also heard testimony from Andrew Vaughn ("VE Vaughn"), an impartial vocational expert. (R. 15, 50–59.) VE Vaughn testified that an individual with Plaintiff's vocational background and residual functional capacity ("RFC"), as assessed by the ALJ, could work as a presser, cleaner, and assembler for small parts. (R. 23, 52.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the

ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the

plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

      **B.**      **The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

7

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§

8

404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e).  An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  20 C.F.R. §§ 404.1545, 416.945.  The ALJ considers all impairments in this analysis, not just those deemed to be severe.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.  After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).  If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

### A. The ALJ's Decision

On April 27, 2020, ALJ Alvarado issued a decision concluding that Plaintiff was not disabled from the application date through the date of the decision. (R. 15–24.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (R. 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, depression, anxiety disorder, OCD, and neurodevelopmental disorder. (*Id*.) At step three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing. (R. 17 –19.)[2]

Prior to step four, ALJ Alvarado assessed Plaintiff's RFC and found that Plaintiff could:

> [P]erform light work . . . except he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. He is able to understand, remember, and carry out simple instructions with only occasional changes to essential job functions; is able to make simple work-related decisions; can occasionally interact with supervisors and coworkers; and can never interact with the public.

(R. 19; *see* R. 19–22.) At step four, the ALJ found that Plaintiff had no past relevant work. (R. 22.) At step five, the ALJ relied on VE Vaughn's testimony to find that Plaintiff could work as a presser, cleaner, or assembler for small parts. (R. 23.) ALJ Alvarado therefore concluded that Plaintiff was not disabled under the Act during the relevant period. (*Id*.)

### B. Analysis

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (D.E. 16 at 3.) Plaintiff asserts that the ALJ's physical and mental RFC assessments are not supported by

---

[2] Specifically, the ALJ analyzed the requirements of Listings 1.04 (spine disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders).

substantial evidence and that the ALJ did not properly consider Plaintiff's subjective complaints. (*See id.* at 4–21.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff argues that the ALJ's physical RFC assessment is not supported by substantial evidence. (*See id.* at 9–15.) Specifically, Plaintiff argues that the ALJ's finding that Plaintiff can perform light work is not compatible with his findings regarding Plaintiff's physical impairments and does not properly account for Plaintiff's documented disc disease. (*See id.* at 9–11, 13–15.) Plaintiff also argues that the ALJ did not perform a function-by-function analysis of Plaintiff's abilities to lift, carry, walk, sit, and stand. (*Id.* at 12.)

However, a fair reading of the ALJ's decision and Plaintiff's medical records shows that the ALJ's physical RFC assessment is supported by substantial evidence. The ALJ found persuasive Dr. Stein's opinion that Plaintiff could perform a range of light work with some postural limitations. (R. 22, 81, 85–86.) The ALJ explained that Dr. Stein's finding was supported by and consistent with the longitudinal record, including Plaintiff's cervical and lumbar X-rays, the MRI of his cervical spine, and the objective findings on clinical examination. (R. 22, 81, 85–86.) Plaintiff's allegation that Dr. Stein did not review his cervical spine MRI, (*see* D.E. 16 at 14–15 n.5), is incorrect. Dr. Stein specifically considered this MRI in issuing his light work finding, noting that Plaintiff had an MRI of his cervical spine in January 2019 and that the MRI showed "mult[iple] bulging levels." (R. 81; *see* R. 22, 398.) Dr. Stein also considered X-ray findings, positive straight leg raise tests, Plaintiff's limited range of motion in his shoulders and neck, and his monthly visits with Dr. Quaglia for pain management. (R. 81, 84–86.) After considering all this evidence, Dr. Stein found that Plaintiff could perform a range of light work with additional postural restrictions, which are reflected in the ALJ's RFC assessment. (R. 19, 81, 84–86.)

11

ALJ Alvarado also thoroughly summarized the available medical documentation for Plaintiff's degenerative disc disease and explained why it did not meet or equal the requirements of Listing 1.04. (R. 17, 21–22.) Remand for a more detailed function-by-function analysis is not necessary where, as here, Plaintiff has not pointed to a single medical opinion in the record tending to show that he was disabled or that he required greater limitations than those assessed by the ALJ. *See* 20 C.F.R. § 404.1512(a) (noting that it is the claimant's burden to prove that his condition is disabling or that additional limitations are necessary). In fact, ALJ Alvarado assessed greater limitations than state agency physician Dr. Rizwan, who opined that Plaintiff could perform the full range of light work. (R. 69–70.) Plaintiff essentially asks this Court to reweigh the evidence that the ALJ considered, but that is impermissible under the substantial evidence standard of review. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation omitted).

Second, Plaintiff argues that the ALJ's mental RFC assessment is not supported by substantial evidence. (*See* D.E. 16 at 15–16.) Specifically, Plaintiff alleges that the RFC does not account for his history as a special education student who dropped out of high school, never engaged in substantial gainful activity, and never lived independently. (*See id.* at 15.) Plaintiff also argues that the RFC does not account for his documented limitations with concentration, abstraction, social interaction, knowledge, speech content, and mood. (*See id.* at 15–16.)

Again, a fair reading of the ALJ's decision and Plaintiff's medical records shows that the ALJ's mental RFC assessment is supported by substantial evidence. The ALJ thoroughly reviewed the medical evidence, including the findings from stage agency experts Dr. Reed and Dr. Kirby, consultative examiner Dr. Friedman, and treating physician Dr. Quaglia. (R. 17–22.) The ALJ's assessment is consistent with these doctors' opinions, and no physician opined that Plaintiff has greater limitations than what the ALJ assessed. The ALJ also considered Plaintiff's mild-to-

moderate learning/language disabilities, issues with concentration, and other mental impairments. (*See* R. 18, 20.) The ALJ's mental RFC assessment accommodates these moderate limitations by limiting Plaintiff to unskilled work and restricting Plaintiff to (1) understanding, remembering, and carrying out only simple instructions; (2) only occasional changes to essential job functions; (3) making simple work-related decisions; (4) occasionally interacting with supervisors and coworkers; and (5) never interacting with the public. (R. 19.) The mental RFC assessment is already restrictive, and more serious mental RFC limitations are unnecessary considering that Plaintiff did not receive mental health treatment or psychiatric medication throughout the relevant time period. (R. 321); *see Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004) (holding that a "lack of medical evidence is very strong evidence that [the plaintiff] was not disabled" because an ALJ is "entitled to rely not only on what the record says, but also on what it does not say" (citation omitted)); 20 C.F.R. § 416.929(c)(3)(iv)-(v) (listing the nature of a claimant's treatment and medication as relevant to assessing disability). Because there is substantial evidentiary support for the ALJ's RFC assessment, the assessment will stand.

Third, Plaintiff argues that the ALJ did not properly consider his subjective complaints of pain, as evidenced by his need for daily oxycodone and anti-inflammatory drugs to cope with his disc disease. (*See* D.E. 16 at 20–21.) "Allegations of pain and other subjective symptoms must be supported by objective medical evidence." *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citation omitted). An ALJ may discount a claimant's allegations about the intensity, persistence, or limiting effects of his symptoms where the evidence does not fully support those allegations, and "need only include in the RFC those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec*, 229 F. App'x 140, 147 (3d Cir. 2007) (citations omitted). "Overturning an ALJ's credibility determination is an extraordinary step, as credibility determinations are entitled

13

to a great deal of deference." *Metz v. Fed. Mine Safety and Health Review Com'n*, 532 F. App'x 309, 312 (3d Cir. 2013) (citation and internal quotation marks omitted).

Here, the ALJ considered Plaintiff's disc disease in detail and addressed his need for daily pain medication. (R. 20–22.) The ALJ then provided sufficient explanation for his conclusion that Plaintiff's hearing testimony about the intensity, persistence, and limiting effects of his symptoms was not fully consistent with the other evidence. (*See id*.) As Plaintiff stated in his function report and reported to Dr. Friedman, he drove, shopped in stores, cared for himself independently, cooked noodles, played video games, went out to eat and watch movies with his girlfriend, and performed chores such as sweeping, mopping, and taking out the garbage. (R. 203–04, 323.) Reviewing the ALJ's decision and the medical record as a whole, it is clear that Plaintiff is able to perform a limited range of light work with certain physical, mental, and social restrictions. No physician has opined otherwise. Substantial evidence—*i.e.*, more than a mere scintilla of evidence—supports the ALJ's decision, and there is no need here for this Court to second-guess the ALJ's credibility determinations. This Court will therefore affirm.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that ALJ Alvarado's factual findings were supported by substantial evidence in the record and that his legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties

14